IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GARY AYERS and PATRICIA AYERS<br><br>    Plaintiffs,<br><br>vs.<br><br>TANAMI TRADING CORPORATION dba LEFT LANE EXPRESS, and LEANNE BRAMLEY-TUCKER<br><br>    Defendants. | MEMORANDUM DECISION and ORDER<br><br><br><br>Case No. 2:08-CV-00472-DB |

Now before the Court is Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), as well as Plaintiff's subsequent motion to defer ruling on Defendant's motion to dismiss and for limited discovery. The Court held a hearing covering both motions on Friday, March 27, 2009. Plaintiffs Gary and Patricia Ayers ("Ayers") were represented by R. Steven Chambers; Defendant Tanami Trading Corporation dba Left Lane Express ("Left Lane") was represented by Heinz J. Mahler. The third defendant, Leanne Bramley Tucker, has not yet been served. After thorough review and consideration of the briefs submitted by the parties and the oral arguments presented by counsel, the Court enters the following Memorandum Decision and Order.

## I. Factual Background

On September 9, 2006, the Ayers' passenger vehicle and a semi truck owned and operated by Left Lane were involved in an accident in Wyoming near both the Idaho and Utah state borders. The conditions were foggy, and though there is some dispute as to who collided with whom, it is undisputed that a collision occurred. *Compare* Left Lane Memo in Support of Motion to Dismiss, Dkt. 8, at 2, *with* Ayers Memo in Opp. to Motion to Dismiss, Dkt. 11, at 2. The Ayers, who are residents of Utah, understandably sought treatment for their various injuries in their home state. On June 18, 2008, the Ayers filed the instant action in the United States District Court for the District of Utah, seeking damages in excess of $75,000 to recover for medical expenses, lost wages, and loss of earning capacity, and to be compensated for other hardships, including a loss of consortium, which they attribute to the Wyoming accident. The Ayers' complaint alleges that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

At the time of the accident, Left Lane was incorporated in the state of Delaware, with its principal place of business in Arkansas. The Left Lane semi truck involved in the accident was en route to Washington State, and its route did not involve Utah in any way. Left Lane Memo in Opp. of Motion to Defer Ruling, Dkt. 18, at 3. Indeed, throughout briefing, Left Lane insisted that the plaintiffs are this case's only connection to Utah, Left Lane Memo in Support of Motion to Dismiss, Dkt. 8, at 2, and that Left Lane did not maintain any office, corporate presence,[1]

---

[1] Though it appears that Left Lane filed corporate documents in Utah in January 1998 and was an active Utah corporation for approximately one year, Left Lane's filing expired over seven years ago. Left Lane Reply Memo to Motion to Dismiss, Dkt. 14, at 2, 4.

business presence, or agent in Utah, Left Lane Memo in Opp. of Motion to Defer Ruling, Dkt. 18, at 2; Tina Spicer aff., ¶ 3-4. At the hearing, however, Left Lane conceded that it had designated Evilsizor Transportation Services ("Evilsizor") as its blanket agent for service of process, and that Evilsizor had in turn designated an agent for the service of process in Utah. Ayers Reply Memo to Motion to Defer Ruling, Ex. A & B. This designation was made pursuant to the Federal Motor Carrier Act, 49 U.S.C. § 13304, which requires interstate truckers to designate an agent in the states in which they operate.

## II. Discussion

### 1. Burden of Proof

As a background matter, when faced with a motion to dismiss for lack of jurisdiction, "the plaintiff need only make a prima facie showing that jurisdiction exists." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009). Furthermore, "[a]ll factual disputes are resolved in favor of the plaintiffs when determining the sufficiency of this showing." *Id.* (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The Court will first examine whether jurisdiction is proper under the Utah's long arm statute, and then whether the FMCA provides an alternate ground for jurisdiction in this case.

### 2. Personal Jurisdiction Under Utah's Long Arm Statute

In general, "[t]o obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). In 2002, the

Utah Supreme Court streamlined its personal jurisdiction test to two factors: (1) whether Utah's long-arm statute–or any other Utah law–authorizes personal jurisdiction over the defendant, and (2) whether that jurisdiction comports with the due process requirements of the Fourteenth Amendment. *State ex. Rel. W.A.*, 2002 UT 127, ¶ 14, 63 P.3d 607. Because Utah's long-arm statute is applied "so as to assert jurisdiction over nonresident defendants to the fullest extent" permitted by the Fourteenth Amendment, these two factors often meld into one. *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998); *see also Rusakiewicz*, 556 F.3d at 1100. To satisfy the due process requirements, however, a defendant must both meet the minimum contacts standard and the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

There are two, oft-rehearsed ways to meet the minimum contacts standard. First, a court may "assert specific jurisdiction over a nonresident defendant 'if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities.'" *OMI Holdings*, 149 F.3d at 1090-91 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Merely 'random, fortuitous or attenuated contacts'" do not suffice to establish jurisdiction. *Rusakiewicz*, 556 F.3d at 1101 (quoting *Burger King*, 471 U.S. at 475). Second, a court may assert general jurisdiction in a case that does not directly arise from a defendant's forum-related activities if the defendant maintains "continuous and systematic general business contacts" with the forum state. *Id.* at 1091 (quoting *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)).

Designating an agent for the service of process within a state, without more, is insufficient to establish general jurisdiction. *See e.g.*, *Tyler v. Gaines Motor Lines, Inc.*, 245 F. Supp. 2d 730, 732 (D.Md. 2003) (according no special weight to defendant's appointment of an agent pursuant to the FMCA for minimum contact purposes); *Sofrar, S.A. v. Graham Eng'g Corp.*, 35 F. Supp. 2d 919, 921 (S.D. Fla. 1999) ("[P]ersonal jurisdiction over a corporate defendant cannot be found on the basis of a defendant's registration to do business in the state and designation of a corporate agent alone."); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 889 (S.D. Tex 1993) ("Service on a designated agent alone does not establish minimum contact.").

The Ayers initially opposed Left Lane's motion to dismiss by arguing that Left Lane was within the reach of Utah's long arm statute and that exercising jurisdiction over it comports with the due process requirements of the Fourteenth Amendment. The Ayers, however, have alleged insufficient contacts to make a prima facia case for personal jurisdiction over Left Lane, even when all factual disputes are resolved in Ayers' favor. The accident occurred in Wyoming and Left Lane's route to Washington State did not involve Utah in any way. The fact the accident was near Utah and involved Utah residents is a quintessentially random, fortuitous, and attenuated contact to Utah.

Furthermore, subjecting Left Lane to general jurisdiction is equally inappropriate. Despite the back and forth between the parties regarding the extent and effect of Left Lane's corporate filings in Utah, it is undisputed that Left Lane's filings with the Utah Department of

Commerce expired many several years ago. During the course of briefing their motion to defer, the Ayers came across records from the Federal Motor Carrier Safety Administration which indicated that Left Lane had appointed an agent in Utah via their blanket agent, Evilsizor. This contact, though perhaps critical to the issue whether Left Lane has consented to personal jurisdiction by complying with the FMCA, is insufficient, standing alone, to establish that Left Lane maintained "continuous and systematic general business contacts" in Utah.

### 3. Federal Motor Carrier Act Jurisdiction

As noted above, the Ayers came across an alternate source of jurisdiction, the Federal Motor Carrier Act ("FMCA"), during the briefing of their motion to defer ruling on Left Lane's motion to dismiss. Congress enacted the FMCA pursuant to its Commerce Clause power to "promote efficiency in the motor carrier transportation system and to require fair and expeditious decisions when required." 49 U.S.C. § 13101(2)(b) (2006). In furtherance of this purpose, the act requires motor carriers to designate "an agent in each State in which it operates." *Id.* § 13304(a). The United States Department of Transportation has adopted regulations implementing this portion of the FMCA, that require motor carriers to "make a designation for each State in which it is authorized to operate and for each State traversed during such operations." 49 CFR § 366.4. The regulations contemplate the possibility that motor carriers may make blanket designations, *id.* at § 366.5 (entitled "Blanket designations"), and provides that such blanket designations operate to name agents in "States in which [a] carrier is or may be authorized to operate, including States traversed during such operations." *Id.* Records from the Federal Motor Carrier Safety Administration indicate that Left Lane designated a blanket agent for the service of

process, Evilsizor, who in turn designated an agent for the service of process in Utah.

Because the FMCA is a federal statute, the Court must determine whether exercising jurisdiction over Left Lane under the present circumstances comports with the due process protections of the Fifth, rather than the Fourteenth, Amendment. *See, e.g.*, *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) ("It is well established that when . . . a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment." (quoting *Republic of Panama v BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997))).

The Fifth Amendment due process standard, unlike the Fourteenth Amendment due process standard set out in *International Shoe*, is comparatively undeveloped.[2] Fifth Amendment due process concerns tend to arise in federal question cases involving federal statutes that provide for nationwide service of process, such as § 27 of the Securities Exchange Act of 1934. The Fifth Amendment is necessarily also implicated in those rare diversity jurisdiction cases involving a federal statute, such as the FMCA, that arguably operates as federally mandated consent to personal jurisdiction in a particular state. *See Ocepek*, 950 F.2d at 557 n.1 (finding the basis of jurisdiction irrelevant in determining whether federal due process has been met). But

---

[2] The Supreme Court has on two occasions decided not to reach questions regarding Fifth Amendment due process. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 102-03 n.5 (1987) (declining to address the theory that "a federal court could exercise personal jurisdiction, consistent with the Fifth Amendment, based on an aggregation of the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits"); *Asahi Metal Industry Co., v. Superior Court of California*, 480 U.S. 102, 113 n.* (1987) (plurality opinion) (stating that "[w]e have no occasion here to determine whether Congress could, consistent with the Due Process Clause of the Fifth Amendment, authorize federal court personal jurisdiction over alien defendants based on the aggregate of *national* contacts, rather than on the contacts between the defendant and the State in which the federal court sits").

even the pronouncements in federal question cases regarding the proper standard under the Fifth Amendment are far from clear. The central point of contention appears to be whether a defendant's minimum contacts with the United States–which is the relevant sovereign in a Fifth Amendment case–are sufficient in the absence of any other contacts between the defendant and the locale in which the federal court sits.

In *Peay v. BellSouth Medical Assistance Plan*, the Tenth Circuit rejected the so-called "national contacts" approach to Fifth Amendment due process that has been adopted by several other circuits. *See* 205 F.3d at 1211 & n.4 ("We are convinced that due process requires something more."). In so doing, the Tenth Circuit recognized that Fifth Amendment due process, like its Fourteenth Amendment counterpart, flows more from the inherently flexible notions of individual liberty than from an inflexible notion of sovereignty. *Id.* at 1211 (citing *Insurance Corp. of Ireland, Ltd. v. Compangnie des Bauxites*, 456 U.S. 694, 702 (1987)). As a result, the *Peay* court held that the Fifth Amendment due process clause "protects individual litigants against the burdens of litigation in an unduly inconvenient forum," regardless of their other national contacts. *Id.* at 1212 (quoting *Republic of Panama*, 119 F.3d at 945). But the court also emphasized that the due process standard under the Fifth Amendment was more permissive of suits against out-of-state parties than the standard employed under the Fourteenth Amendment. *Id.* at 1212-13 (noting that "any constitutional due process limitations upon a federal . . . statute must be broadly defined" and emphasizing "that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern") (quotation omitted).

*Peay* specifically involved the Fifth Amendment due process concerns raised by a

Federal statute authorizing nationwide service of process. *Id.* at 1209. Certainly, the precise concerns raised by a nationwide service of process statute are distinguishable from those raised by a federal statute, such as the FMCA, that mandates the appointment of an in-state agent in that the latter involves a measure of consent to a particular jurisdiction. The *Ocepek* court, for example, relied upon the consent inherently manifested in the appointment of a agent pursuant to the FMCA to find that jurisdiction was proper. *Ocepek*, 950 F.2d at 557-58 (holding that consent was a "traditional basis of jurisdiction" and that no further due process fairness analysis was required once the presence of consent had been established (citing *Burnham v. Superior Court of California*, 495 U.S. 604, 619 (1990) (J. Scalia, plurality opinion))). *Burham*, however, involved physical presence, not consent, and J. Scalia's opinion that service upon a defendant physically present within a forum was enough to confer jurisdiction without any further inquiry into the reasonableness of that jurisdiction did not attract a majority of the Court. 495 U.S. at 626-27. Furthermore, in the one portion of his opinion addressing consent, Justice Scalia noted that one of the objects of the Court's opinion in *International Shoe* was to sweep aside fictions, such as substituted service or the consent implied by the appointment of an agent pursuant to a registration statute, that had grown up around the unbending territorial limits set out in *Pennoyer v. Neff. Id.* at 617-18 (referring to *St. Clair v. Cox*, 106 U.S. 350, which involved a state statute that required nonresident corporations to appoint an in-state agent upon whom process could be served, as one of the cases involving a "purely fictional" form of consent). Notably, this is one point that Justice Brennan and Justice Scalia agreed upon. *See id.* at 630 ("I . . . continue to believe that the minimum contacts analysis developed in *International Shoe* . . . represents a far

9

more sensible construct for the exercise of state-court jurisdiction than the patchwork of legal and factual fictions that has been generated from the decision in *Pennoyer v. Neff*.") (J. Brennan, plurality opinion) (quotation omitted). Finally, as a practical matter, unlike physical presence in a forum, consent can be manifested in many forms, express and implied, and the scope of a form of consent is often susceptible to debate. It therefore makes sense to inquire into the reasonableness of conferring jurisdiction where the basis of that jurisdiction lies in the purported consent of the defendant. In some cases–for example, where the defendant provides express consent to a particular jurisdiction after being served with a complaint–this inquiry is necessarily very short. In cases involving manifestations of consent that are more tenuous and given long before being served, an inquiry into the reasonableness of conferring jurisdiction pursuant to that consent is necessarily more involved.

The *Peay* court set out a two-part test to determine whether jurisdiction comports with the Fifth Amendment. First, the defendant must "show that the exercise of jurisdiction is so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent." *Id.* at 1212 (quoting *Burger King Corp.*, 471 U.S. at 478). The Tenth Circuit directed courts to consider the following factors in determining whether the defendant has met this burden:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the

> nature of the regulated activity in question and the extent of impact that the
> defendant's activities have beyond the borders of his state of residence or
> business.

*Id.* (citing *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 201 (E.D.Pa. 1974).

If the defendant can make this showing, then the court must decide whether "the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Id.* at 1213 (quoting *Republic of Panama*, 119 F.3d at 948). To determine whether the burden imposed upon the defendant sufficiently justified,

> courts should examine the federal policies advanced by the statute, the
> relationship between [the jurisdictional element of the statute] and the
> advancement of these policies, the connection between the exercise of jurisdiction
> in the chosen forum and the plaintiff's vindication of his federal right, and
> concerns of judicial efficiency and economy.[3]

*Id.* at 1213 (quoting *Republic of Panama*, 119 F.3d at 947 N.25).

Under the circumstances of the present case, the Court finds that Left Lane cannot meet is burden of establishing that its inconvenience in defending this suit in Utah rises to the level of a constitutional concern. Most of the factors set out in *Peay* weigh in favor of exercising jurisdiction in this case. Indeed, the only factor that weighs in Left Lane's favor is the first factor regarding the extent of Left Lane's contacts with the forum state. By contrast, the second and

---

[3] The *Peay* court concluded this quotation with a final sentence from the *Republic of Panama* decision: "Where . . . Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives." 205 F.3d at 1213. This reasoning would seem to equally apply when Congress, instead of providing for nationwide service of process, mandates the appointment of agents for the service of process in several states. *See supra* note 3. However, because strict adherence to this logic would also necessarily gut the entire fairness inquiry so carefully delineated in *Peay*, it should, perhaps, be read with a grain of salt.

11

fifth factors, which look to the "nature and extent and interstate character of the defendant's business" and "the extent of impact that the defendant's activities have beyond the borders of his state," respectively, weigh heavily in favor of exercising jurisdiction. *Peay*, 205 F.3d at 1212. Left Lane was engaged in the trucking business in the western United States. Its activities were interstate in character in both senses of the word, and the impact of those activities beyond Left Lane's home state of Arkansas are readily apparent. The fourth factor, which looks to "the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's . . . place of business" similarly weighs in favor of jurisdiction. *Id.* By all accounts, the discovery proceedings will take place outside of Left Lane's home state of Arkansas. The accident occurred in Wyoming and Left Lane concedes that "[m]any of the witnesses, including the police officers and accident witnesses, are likely located in Wyoming." Left Lane Reply in Support of Motion to Dismiss, Dkt. 14, at 5. Finally, the third factor regarding judicial economy does not weigh heavily in either party's favor under the circumstances. Accordingly, Left Lane cannot demonstrate that the Ayers' chosen forum is unduly inconvenient under the Fifth Amendment due process standard set out by the Tenth Circuit in *Peay*. Because Left Lane cannot meet its initial burden to establish undue inconvenience, the Court need not proceed to inquire whether the Federal interest embodied in the FMCA outweighs the burden imposed on Left Lane.

## Conclusion

Based on the foregoing, Defendant Left Lane's motion to dismiss the complaint based on a lack of personal jurisdiction is DENIED. The Ayers' motion to defer ruling on defendants'

motion to dismiss and for limited discovery is accordingly MOOT.

**IT IS SO ORDERED.**

DATED this 14th of May, 2009.

                          BY THE COURT:

                          _____

                          Judge Dee Benson
                          United States District Court